# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**ALFREDO C.[1]**,

        Plaintiff,

v.

**ANDREW M. SAUL,** Commissioner of Social Security,

        Defendant.

Case No. 6:18-cv-1460

**OPINION AND ORDER**

James W. Moller, P.O. Box 1368, Portland, OR 97070. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Brett E. Eckelberg, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

        Plaintiff Alfredo C. brings this action pursuant to section 205(g) of the Social Security Act ("the Act"), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Act. For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS for the immediate calculation and payment of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff filed an application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on March 23, 2015. AR 216. In both applications, he alleged disability beginning May 1, 2014. Plaintiff's claims were denied initially on June 4, 2015 and upon reconsideration on July 28, 2015. AR 115-16, 145-46. Plaintiff appealed and testified at a hearing held before Administrative Law Judge ("ALJ") Ted Neiswanger. On October 12, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied the request for review, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Plaintiff was born on September 3, 1989, making him 24 years old at the time of the alleged disability onset and 30 years old as of the date of this opinion. AR 102.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay

or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since the date of alleged disability onset. AR 19, 21. At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar disorder evolving into paranoid schizophrenic disorder in 2017; attention deficit hyperactivity disorder ("ADHD"); and cannabis dependence. AR 21. At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22-23.

At step four, the ALJ calculated Plaintiff's RFC and found that Plaintiff could perform a full range of work at all exertional levels, but with the following limitations:

> [H]e can perform short, simple, routine tasks. He can tolerate no more than occasional superficial contact with the public. He can tolerate less than occasional work-related contact with coworkers. He requires the ability to work alone in a setting with few changes and few distractions. He can perform low stress work (defined as

>no teamwork tasks, no fast-paced production pace work, and few
>changes of work routine or setting). He must avoid all exposure to
>workplace hazards.

AR 23. Based on these limitations, the ALJ found that Plaintiff was capable of performing past relevant work as a janitor.[2]

## DISCUSSION

Plaintiff argues that the ALJ committed two legal errors requiring reversal. First, Plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons for discrediting Plaintiff's subjective symptom testimony. Second, he argues that the Commissioner lacked substantial evidence for his conclusion that Plaintiff had past relevant work as a janitor that he remained capable of performing.

### A. Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

---

[2] The ALJ appears erroneously to have stated that Plaintiff had past relevant work as a security guard, but the parties agree that the ALJ instead meant to find that Plaintiff was able to perform past relevant work as a janitor.

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with SSR 16-3p. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the

PAGE 7 – OPINION AND ORDER

claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff's testimony described profound paranoia and anxiety. For example, Plaintiff told the ALJ that while waiting for the hearing to begin, Plaintiff heard "voices or thoughts" "telling me that I have to come in here and sit through this conversation with the Priest of Baal." AR 70. Plaintiff also explained that he stopped taking his prescribed anti-psychotic medications because he believed his treating doctor, Dr. Scott Mendelson, was trying to poison him. AR 71-72. Additionally, Plaintiff testified that he was unable to function in stressful or difficult situations and instead simply "walk[s] away," including from his previous job as a dishwasher. AR 57-58, 75. On the whole, Plaintiff's testimony described severe mental illness that interfered with his

ability to complete simple tasks, show up to work regularly, and manage conflict with others. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the types of symptoms alleged and found no evidence of malingering. The ALJ discounted Plaintiff's subjective symptom testimony, however, for three reasons: inconsistency with the objective medical evidence; a conservative course of treatment; and inconsistency with reported daily activities. AR 24.

### 1. Consistency with Medical Evidence

In concluding that the medical record did not support the severity of Plaintiff's claimed symptoms, the ALJ gives a lengthy summary of the medical record but does not explicitly identify the portions of the record that are inconsistent with Plaintiff's testimony. Much of the record to which the ALJ cites in fact supports Plaintiff's symptom testimony, including evidence of hypomania, anxiety, anger management problems, racing thoughts, hopelessness, suicidal ideation, paranoia, some looseness of association, and hallucinations. The ALJ thus failed to offer specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. *See Scarborough v. Berryhill*, 2017 WL 896283 at *7 (E.D. Cal. Mar. 7, 2017) (finding that a recitation of the medical evidence without explaining what evidence was inconsistent with claimant's testimony was not specific, clear, and convincing). Moreover, it appears to the Court that Plaintiff's testimony is consistent with the record evidence.

### 2. Plaintiff's Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533

F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3).

Plaintiff's treatment is not conservative. Plaintiff's doctors tried to treat his psychiatric needs with an array of medications: Adderall, Ritalin, Risperdal, loxapine, Wellbutrin, clonazepam (Klonopin), lamotrigine (Lamictal), Abilify, and quetiapine (Seroquel). AR 335, 401, 408, 417, 439. Given the complexity of Plaintiff's psychiatric conditions and the varied prescription medications his doctors prescribed, the characterization of Plaintiff's treatment as conservative was not a clear and convincing reason supported by the evidence to reject his subjective symptom testimony. *See Drawn v. Berryhill*, 728 Fed. App'x 637, 642 (9th Cir. 2018) (rejecting characterization of treatment as conservative where the claimant was taking "a number of psychiatric medications"); *Callahan v. Berryhill*, 2018 WL 2446649 at *1 (C.D. Cal. May 29, 2018) (same); *cf. Parra*, 481 F.3d at 750-51 (holding that the ALJ did not err in discounting the claimant's symptom testimony because his physical ailments were treated with the "conservative treatment" of an over-the-counter pain medication).

The ALJ concluded that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." AR 26. The ALJ, however, does not elaborate on what medical treatment one would expect for a person totally disabled by the kind of psychiatric conditions the Plaintiff suffers from, nor does the ALJ explain why the medication Plaintiff took constituted "conservative treatment." Other courts have found that a failure to identify what additional treatment a totally disabled person would obtain suggests that the ALJ impermissibly relied on his own lay medical opinion. *Schultz v. Colvin*, 32 F. Supp. 3d. 1047, 1060 (N.D. Cal. 2014). The ALJ in this case does not cite any statement by a medical professional suggesting that Plaintiff's course of treatment was conservative.

In addition, the Ninth Circuit has cautioned that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation" "because mental illness is notoriously underreported." *Regennitter v. Commissioner of Social Sec. Admin*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). In light of this guidance and the evidence in the record, the ALJ's "conservative treatment" rationale for discounting Plaintiff's symptom testimony is not aclear and convincing reason supported by record evidence.

### 3. Reported Daily Activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to be a sufficient basis to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*,

157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ identified Plaintiff's ability to "perform adequate self-care, prepare simple meals, do household chores and go out to the store," as well as his ability to go swimming, as daily activities inconsistent with Plaintiff's symptom testimony. AR 26. The ALJ overstated the relevance of these daily activities to Plaintiff's ability to work. First, the ability to perform adequate self-care and do household chores is the kind of routine activity that is insufficient to justify discounting Plaintiff's symptom testimony. *See Vertigan*, 260 F.3d at 1050. Second, the ability to "prepare simple meals" apparently refers to nothing more than Plaintiff's capacity to microwave frozen food. AR 241, 249. Third, the record does not support the assertion that Plaintiff is in fact able to "go out to the store." Plaintiff testified that he takes clonazepam before going to the store to control his anxiety, but that despite this precaution, he is unable to leave the car 80 percent of the time and simply waits for his mother or girlfriend to complete the grocery shopping. AR 60-61, 68-69. On the occasions that Plaintiff enters the store, he frequently panics and feels an urge to "start throwing stuff or hitting myself or running for no reason." AR 68. Finally, Plaintiff's ability to swim is not relevant to his capacity to work, particularly as a janitor, the job the ALJ found Plaintiff was able to perform. For all those reasons, Plaintiff's daily activities are not a clear and convincing reason to discount his symptom testimony.

### B. Plaintiff's Past Relevant Work

Plaintiff also argues that the ALJ erred in determining that Plaintiff's short tenure as a janitor constituted "past relevant work" for the purposes of the disability determination *and* in determining that Plaintiff was presently able to perform that work. The Court does not reach this question because the ALJ decided this issue after erroneously rejecting Plaintiff's testimony, rendering the analysis moot.

### C. The Proper Remedy is to Remand for the Immediate Payment of Benefits

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the

PAGE 13 – OPINION AND ORDER

district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

As described above, the Court has already determined that the ALJ made a harmful legal error in discrediting Plaintiff's subjective testimony. After a review of the record as a whole, the Court finds that the record is fully developed, free from conflicts or ambiguities, and there are no outstanding issues of material fact that would make further proceedings useful. Crediting Plaintiff's testimony as true, the Court finds that the ALJ would be required to find Plaintiff disabled on remand.

The Commissioner argues further proceedings are necessary to evaluate the "significant factual conflicts supported by substantial evidence, including medical records and opinions from acceptable medical sources that Plaintiff is not disabled." The Commissioner does not elaborate or identify the "factual conflicts" for the court to evaluate the merits of the argument, but he cites to a portion of the ALJ's hearing decision where the ALJ explains the reasons for his finding of non-disability. Most of this passage concerns the ALJ's legally insufficient reasons for finding Plaintiff's symptom testimony unreliable, discussed above. The ALJ provides one other rationale for his non-disability determination: that Plaintiff's doctors' "treatment notes and examination findings reveal that… [Plaintiff] would still be able to work at a simple, routine, low stress job that involved limited interaction with others." AR 26. The ALJ cites to the assessments of the state agency psychologists, Drs. Edwin Holmes, Psy.D. and Bill Hennings, Ph.D.; the consultative psychologist, Dr. Alvord; and Dr. Mendelson, the treating psychiatrist.

### 1. The 2015 Assessments of Dr. Holmes, Dr. Hennings, and Dr. Alvord

Dr. Holmes and Dr. Hennings conducted their assessments of Plaintiff's psychiatric health in 2015, the same year that Dr. Alvord conducted his first assessment. Dr. Holmes

PAGE 14 – OPINION AND ORDER

diagnosed Plaintiff with depression, anxiety, PTSD, ADD, and anger management issues, but concluded that Plaintiff was able to perform unskilled labor. AR 89, 100. Dr. Hennings confirmed Dr. Holmes' finding that Plaintiff was not disabled with little additional explanation or analysis. AR 129. Dr. Alvord diagnosed Plaintiff with chronic depression and anxiety but stated a belief that with "far more intensive psychiatric care, [Plaintiff] could function on some level occupationally."

The Commissioner is correct that these 2015 reports support the ALJ's finding of non-disability. Plaintiff, meanwhile, explains that he did not share the full extent of his symptoms with these doctors in 2015 out of a sense of shame and embarrassment. The Ninth Circuit has ordered an immediate award of benefits based on the credit-as-true rule where conflicting medical opinions were presented. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (finding that remand for an award of benefits was appropriate despite the court noting inconsistencies in medical opinions). In this case, the 2015 reports, each based upon a single meeting, do not raise serious doubt about Plaintiff's disability in light of the overall record, particularly Dr. Mendelson's and Dr. Alvord's more recent and thorough evaluations.

2. **Dr. Mendelson's Assessment**

Dr. Mendelson has treated Plaintiff since 2015. Dr. Mendelson's chart notes reflect shifting diagnoses and frequent adjustment of medications in an attempt to treat Plaintiff's complex mental illnesses. In 2017, Dr. Mendelson found that Plaintiff suffered from "extraordinary examples of looseness of association," AR 420, and demonstrated "very twisted logic," "clearly psychotic thinking," and "bizarre delusions of reference." AR 422. Plaintiff admitted "out there thoughts:" "that words have power through their sound," "that we are under Maritime Admiralty law because we are birthed by DOCKtors, (docks being close to water) and

come through a channel," and that "TeleVISION means telepathic vision by forces." AR 420. Dr. Mendelson began to believe Plaintiff suffered from paranoid schizophrenia. *Id.*

A few months later, Dr. Mendelson met again with Plaintiff. AR 424. Plaintiff reported that the clonazepam was "very helpful" and that his symptoms had improved somewhat. *Id.* Dr. Mendelson arranged for Plaintiff to receive psychotherapy in hopes that Plaintiff could reduce his reliance on benzodiazepams like clonazepam. *Id.* Dr. Mendelson did not express any belief, however, that Plaintiff was able to maintain any kind of employment.

3. **Dr. Alvord's 2017 Assessment**

Dr. Alvord's second assessment particularly demonstrates Plaintiff's disabling psychiatric illnesses. At the appointment with Dr. Alvord, Plaintiff brought out a journal of more than 100 pages "with closely scrawled notes regarding his paranoia about the devil and other spiritual delusions." AR 483. Plaintiff "rambled almost incessantly regarding his fears of getting personal messages from the TV and satanic symbols 'in almost everything you see every day.'" *Id.* Plaintiff articulated his fear of impending apocalypse and a belief that five-syllable words have direct ties to satanic organizations. AR 484. Dr. Alvord wrote that Plaintiff was preoccupied with terrorism and believed "the Muslims are coming to cut off all our heads." *Id.* Plaintiff described possible auditory hallucinations and noted that his paranoias alienated other people, contributing to a near-total lack of social interactions apart from those with his girlfriend. *Id.* Dr. Alvord noted that Plaintiff was homeless, sometimes sleeping on couches but occasionally under bridges or other places outside. *Id.* Dr. Alvord also noted that Plaintiff "was far more forthcoming" than in the first assessment, writing that Plaintiff often felt embarrassed when others learned of his delusions and paranoias. AR 483.

The ALJ wrote that he afforded "significant weight to [Drs. Mendelson and Alvord] whose treatment notes and examination findings reveal that as of March 2017, the claimant…

would still be able to work at a simple, routine, low stress job that involved limited interaction with others." AR 26. But neither the ALJ nor the Commissioner identify where these doctors expressed this view of Plaintiff's ability to work. Dr. Alvord, in fact, wrote that "there is little doubt in my mind that [Plaintiff] is suffering from a Psychotic Disorder" and "has not received an overly beneficial response to medications… [Plaintiff] is an individual suffering from chronic **severe psychiatric illness** that will have a **dramatic impact on his everyday functioning**." AR 486 (emphasis added). Dr. Alvord warned that "[i]t cannot be overemphasized the level of his psychotic delusions." AR 483.

### 4. Vocational Expert Testimony

The VE testified that a person who was 15% less productive than the employer's reasonable expectation would not be employable. AR 84. If the employee were unable to interact civilly with supervisors and coworkers so as to create noticeable conflicts, he would be unable to maintain employment. AR 84. The VE also testified that if a person in a janitorial position ever walked off the job without explanation, that person would be terminated. AR 85. If the worker had to be reminded how to do certain tasks or was not performing tasks appropriately, the employer would terminate the employee after a probationary period. AR 85.

If credited as true, Plaintiff's subjective symptom testimony establishes that Plaintiff is disabled, because he describes severe symptoms of psychiatric illness that prevent him from getting to work regularly, working under supervision, and remaining in the workplace for a full day on a regular, continuous basis. Plaintiff's testimony is consistent with all the evidence in the record and is particularly supported by the opinions of Dr. Mendelson and Dr. Alvord.

Moreover, the "exceptional facts" of this case, *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990), counsel strongly in favor of remanding for immediate payment of benefits. Plaintiff first sought benefits five years ago; his claimed disability began almost six years ago.

PAGE 17 – OPINION AND ORDER

He suffers from serious mental illness requiring significant medical treatment. He has been homeless and unable to maintain steady employment or support himself for most of his adult life. "[F]urther delays at this point would be unduly burdensome." *Id.* For these reasons, this case is remanded for the immediate payment of benefits.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 20th day of February, 2020.

/s/ *Michael H. Simon*  
Michael H. Simon  
United States District Judge